# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

NORRIS B. HOWARD
ADC #83225                                                                                    PETITIONER

VS.                          5:14CV00062 DPM/JTR

WENDY KELLEY, Director,
Arkansas Department of Correction[1]                                    RESPONDENT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge D. P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

Mail any objections to:

>   Clerk, United States District Court
>   Eastern District of Arkansas
>   600 West Capitol Avenue, Suite A149
>   Little Rock, AR 72201-3325

---

[1] Wendy Kelley became Director of the Arkansas Department of Correction on January 13, 2015, and is automatically substituted as Respondent pursuant to Fed. R. Civ. P. 25(d).

## I. Background

In 2000, Petitioner, Norris B. Howard ("Howard"), was convicted of attempted capital murder and third-degree carnal abuse, and sentenced to twenty years in the Arkansas Department of Correction ("ADC"). *Doc. 12-1*. On February 20, 2014, he filed this § 2254 habeas action challenging the prison disciplinary conviction that allegedly resulted in the "rescission" of his parole. *Doc. 2*.

In his habeas Petition, Howard asserts that, on October 27, 2011, the Parole Board authorized his release from the ADC on parole, "subject to approval of [a] suitable [release] plan."[2] *Doc. 2 at 59*. However, he "experience[d] problems locating a residence to parole to" because of his criminal history and sex-offender registration. *Doc. 2 at 10*. This caused him to remain incarcerated in the Randall L. Williams Unit ("RLWU") while he attempted to obtain a suitable residence for a release plan. *Id.*

On January 17, 2013, Captain J. Herrington, an officer in the RLWU, signed a Major Disciplinary charging Howard with: (1) unauthorized use of mail; (2) failure to obey an order; and (3) inducing another to violate ADC policy.[3] *Doc. 31-1 at 12*. The charges arose from a letter Howard wrote and mailed to Marcus Richardson, the husband of Lt. A. Richardson, an officer at the RLWU. In a

---

[2] In the nomenclature of the Parole Board, Howard's "parole" was a "Transfer To DCC [Department of Community Correction] Supervision." *Doc. 2 at 59*.

[3] Howard received the Major Disciplinary on January 24, 2013, while he was a prisoner in the RLWU. *Doc. 2 at 39*.

2

memorandum supporting the charges in the Major Disciplinary, Captain Herrington states the following:

> On January 16, 2013 at approx. 4:30 pm Lt. A. Richardson arrived at the RLW unit and spoke to me, Captain J. Herrington. Lt. Richardson advised me that a letter had arrived at her home addressed, "Mr. Marcus Richardson 3203 Orchid Drive Pine Bluff, AR. 71603." The sender was address [sic] Norris Howard 83225 R.L.W. Unit CBII 7206 West 7th St. Pine Bluff, AR. 71603.The letter was post marked 01/15/2013 with the code 045J83097040. On the letter in red print was "LETTER ORIG FROM CORRECTIONAL FACU". This letter was unopened when Lt. Richardson handed it to me. An investigation was started at this time.
>
> On January 16, 2013 at approx. 4:45 pm Lt. A Richardson and I, Captain J. Herrington, arrived at the captain's office. Inmate N. Howard 083255 arrived and I, Captain Herrington, started question [sic] inmate N. Howard concerning the letter. Inmate N. Howard stated that he wrote Mr. Marcus Richardson the letter a couple of days ago. Inmate N. Howard stated that he and Mr. Richardson were old class mates and friends. Inmate N. Howard stated that he got the address from the Pine Bluff Commercial Newspaper Bankruptcy Section. Inmate Howard was asked if he knew that Lt A. Richardson and Mr. Marcus Richardson was [sic] married. Inmate Howard stated that he did know. On page one of the letter, third paragraph down, "Got married to Annette, congratulations. She doesn't know that I know you guys are married and I'll keep you [sic] business a secret around here being her work place." I advised inmate Howard that it was against the rules for inmates to contact staff or staff's family members outside of work. Inmate Howard did not respond. I asked inmate Howard, why he offered money to Mr. Richardson? Inmate Howard did not respond. Page two paragraph four [of Howard's letter], "Say perhaps you might know someone that I could pay to let me parole to their residence. Then I'd transfer my parole to a local motel until I fix my house back up to live in. Anywhere, it doesn't have to be Pine Bluff or Arkansas. And if they're also down with getting money I have other hook up's for them & you."[4]
>
> Inmate N. Howard completed a witness statement and returned to his barracks.

---

[4] Howard's letter states, in pertinent part: "Say, perhaps you might know someone that I could pay to let me parole to their residence. Then, I'd transfer my parole to a local motel until I fix my home back up to live in. Anywhere — It doesn't have to be Pine Bluff or Arkansas. And — If they're also down with gettin money, I have other hook up's for them & you. Rental cars for 30 days free plus get paid. Free motel for 30 days plus get paid. Free rent for 7 months plus get paid & etc. It's details — particulars. I'd rather not mention right now — okay. And if such prospective person of interest be a female and also down for other gigs in the skin biz as an entertainer, she'd make thousands for just a few minutes. I believe you know the biz. I have an elite service of prominent clients." *Doc. 31-1 at 15*.

3

> I questioned Lt. Richardson concerning the letter. Lt. Richardson stated that she got the letter out of the mail box and realized that the letter was from an inmate housed at the RLW unit. Lt. Richardson stated that she brought the letter straight up here and wanted to let us know as soon as possible. Lt. Richardson stated that she did not know inmate N. Howard but that her husband M. Richardson did know him from the past.

*Doc. 31 at 10-11*.

On January 29, 2013, a Disciplinary Hearing Officer ("DHO") conducted a hearing, during which Howard submitted the following written statement: "Mr. Richardson and I are old friends. I did get the address from the newspaper. I was eager to get in touch with him. I did ask him if he could help me to get a place to live because of my charge. Lt. Richardson asked me not to write her house again. I did not know she was there." *Doc. 2 at 40*.

The DHO convicted Howard of: (1) unauthorized use of mail; (2) failure to obey an order; and (3) inducing another to violate ADC policy. *Doc. 2 at 40*. The DHO credited the charging officer's report that "Inmate Howard offered money to Inmate [sic] Richardson if he would assist him in finding him a location to live." *Doc. 2 at 41*. The DHO additionally found that "[Howard] . . . must learn that asking anyone to violate departmental policy, unauthorized use of the mail and failure to obey staff orders are against ADC rules and regulations and will not be tolerated for security purposes." The sanctions imposed by the DHO included: (1) 30 days of punitive isolation; (2) a reduction in good-time classification; and (3) the disallowance of 300 days of good-conduct time. *Doc. 2 at 40.* Howard pursued

an administrative appeal, which was affirmed by the ADC Director on April 11, 2013. *Doc. 2 at 58*.

According to Howard, his parole was automatically "rescinded" due to his major disciplinary conviction and the reduction in his good-time classification. On June 27, 2013, the Parole Board "deferred" Howard's parole, subject to him completing the ADC RSVP [Reduction of Sexual Victimization] program. *Doc. 2 at 61*. On July 21, 2013, the Parole Board denied Howard's request for reconsideration. *Doc. 2 at 62*.

In his habeas Petition, Howard argues that: (1) his disciplinary convictions are not supported by substantial evidence; (2) he received inadequate notice of the disciplinary charges; (3) he did not receive notice of the evidence that ADC officials relied on to convict him; and (4) his parole "rescission," based on the disciplinary conviction, violated his Due Process rights. *Doc.2 at 19-36*.

Respondent argues that Howard's habeas claims are: (1) barred by the statute of limitations; (2) not cognizable in a habeas action; (3) procedurally defaulted; and (4) fail on the merits. *Doc. 4.*

For the reasons discussed below, the Court recommends that the Petition for a Writ of Habeas Corpus be denied, and that the case be dismissed, with prejudice.[5]

---

[5] Respondent's statute of limitations defense is based on the argument that AEDPA's one-year limitations period was triggered on January 29, 2013, when Howard received his disciplinary convictions. *Doc. 12 at 2*. In a recent decision, United States Magistrate Judge Beth Deere noted a split among circuits on the question of whether the habeas statute of limitations is triggered when a prison disciplinary is first imposed, as opposed to when a

5

## II. Discussion

### A.   Howard's Disciplinary Convictions

In *Wolff v. McDonnell*, 418 U.S. 539, 555-58 (1974), the Court held that a disciplinary conviction which results in a prisoner losing good time credits implicates a liberty interest protected by the Due Process Clause.[6] However, in *Superintendent v. Hill*, 472 U.S. 445, 454 (1985), the Court clarified that the Due Process Clause only requires a DHO's decision imposing a disciplinary conviction to be supported by "some evidence in the record." As long as that low evidentiary threshold is met, a DHO's decision cannot be characterized as arbitrary. *Id.* at 457. Thus, in prison disciplinary matters, federal courts must defer to the judgment of prison officials as long "as some evidence in the record" supports the disciplinary conviction and the due process requirements of *Wolff* are satisfied.[7]

Finally, because the loss of good time credits affects the duration of a prisoner's sentence, a habeas action is a prisoner's exclusive remedy to challenge

---

prisoner later exhausts his administrative appeal. *See Gaston v. Hobbs*, 2014 WL 122681, *2-3 (E.D. Ark. Jan. 10, 2014) (citing cases). The Eighth Circuit has not addressed this question. *See id.* Because Howard's claims fail for other reasons, it is unnecessary for this Court to address Respondent's statute of limitations argument.

[6] The Court in *Wolff* also held that due process requires that an inmate, who is the subject of a disciplinary proceeding, must receive: (1) written notice of the disciplinary charges at least 24 hours before the disciplinary hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement from an impartial decision maker identifying the evidence relied on and the reasons for the disciplinary action. *See Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

[7] This limited review does not require a court to examine the entire record, make an independent assessment of the credibility of witnesses, or weigh evidence. Prison officials can permissibly rely on violation reports and hearsay to find inmates guilty of disciplinary infractions. *See Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008). Finally, the Eighth Circuit has held that, as long as the disciplinary proceeding is conducted by an impartial decision maker, a report from a correctional officer constitutes "some evidence" upon which to base a disciplinary decision. *See Hartsfield,* 511 F.3d at 831. The "some evidence" standard is satisfied even if the inmate disputes the facts in the report and the only support for the DHO's decision is the report itself. *Id.*

the constitutionality of the final disciplinary conviction. *See Portley-El v. Brill*, 288 F.3d 1063, 1066-67 (8th Cir. 2002).

Howard acknowledges that he received a copy of the Major Disciplinary on January 24, 2013. *Doc. 2 at 9, 39*. The Major Disciplinary described the disciplinary charges being brought against him and states that those charges arose from the letter he wrote to M. Richardson, the husband of Lt. A. Richardson, "offer[ing]money to Mr. Richardson if Mr. Richardson would assist him in finding a location to live." *Doc. 2 at 39*. While Howard strongly disputes how the charging officer interpreted his letter, the DHO accepted that interpretation and explained his reasons for doing so in his decision.[8] This was sufficient to satisfy the due process requirements of *Wolff* and constituted a decision based on "some evidence" as required by *Hill*.

B.  **The Parole Board's Alleged "Rescission" of Howard's Parole**

Howard also argues that the Parole Board's "acceptance of the [DHO's] decision was arbitrary and wholly without due process protection." He complains

---

[8] Because Howard admitted in his letter that he knew that Marcus Richardson was married to Lt. A Richardson, the DHO fairly could have inferred that Howard's "offer" to Marcus was also made to his wife. Notably, ADC inmates and personnel are prohibited from any association in business relationships, partnerships, loans, or "legal or financial transactions." *ADC Administrative Regulation* § 210. Additionally, "ADC policy prohibits business relationships, partnerships, loans of money, close personal associations, dating or marriage and legal or financial transactions with ex-inmates, parolees, or probationers except when they are family members and this should be disclosed to the Warden/Supervisor and be in writing and placed in their personnel file for future reference." *ADC Employee Handbook* at 32.
  It is unclear to the Court what "staff order" Howard allegedly disobeyed. In addressing the "some evidence" standard, Respondent does not explain the ADC's position other than to argue that the "records submitted with Howard's petition indicate there was some evidence of guilt." *Doc. 12 at 6*. However, even if no evidence supported the charge of "disobeying a staff order," the other two convictions for improper use of the mail and inducement of another to violate policy were sufficient to support the sanctions imposed by the DHO. *See* ADC Inmate Disciplinary Manual at § VII(G)(1) (establishing the range of sanctions).

that the Parole Board did not comply with various statutory provisions for adjudication contained in the Arkansas Administrative Procedures Act. *Doc. 2 at 30-36*.

Respondent correctly points out that, under well-established Eighth Circuit case law, Howard has not stated a cognizable habeas claim based on the Parole Board's alleged failure to follow state law in "rescinding" his parole, based on him receiving the Major Disciplinary conviction. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (holding that there is no federal constitutional interest in having state officers follow state law or prison officials follow prison regulations).

Respondent also argues that, even if Howard had stated a federal constitutional claim, it is procedurally defaulted because he never challenged the Parole Board's decision in state circuit court as he was required to do under the Arkansas Administrative Procedures Act ("APA"). *See* Ark. Code Ann. § 25-15-212 (Repl. 2014). In pertinent part, this statute provides as follows:

> In cases of adjudication, any person, except an inmate under sentence to the custody of the Department of Correction, who considers himself or herself injured in his person . . . by final agency action, shall be entitled to judicial review of the action under this subchapter.

Ark. Code Ann. § 25-15-212(a) (Repl. 2014).

The plain language of this provision *prohibits* ADC inmates from asserting claims for judicial review under the APA. However, in *Clinton v. Bonds*, 306 Ark. 554, 816 S.W.2d 169 (1991), the Court held that this provision of the statute was

*unconstitutional* because it denied ADC inmates judicial review of federal or state constitutional claims: "we emphasize that Act 709 [codified at Ark. Code Ann. § 25-15-212(a)] unconstitutionally deprives inmates of review of *constitutional* questions because judicial review of all other administrative questions may be granted, or withheld, according to the Legislature's discretion." *Id.* at 172, 559 (emphasis in original).

Habeas claims are, by definition, federal constitutional claims. S*ee* 28 U.S.C. § 2254(a). Thus, under the Court's holding in *Clinton,* such claims, arising from allegedly unconstitutional actions by the state Parole Board, must be fully exhausted in an APA action in state court *before* they can be pursued in a § 2254 habeas action in federal court. Courts in the Eastern District of Arkansas have consistently cited *Clinton* as authority for dismissing habeas claims challenging Parole Board decisions where the petitioner failed to pursue timely judicial review under the APA in state court.[9]

---

[9] *See e.g Tucker v. Norris*, 2009 WL 5066761, *3 (E.D. Dec. 16, Ark. 2009) (unpublished) ("Petitioner could have filed a claim raising his constitutional claims under the Administrative Procedures Act in the circuit court within thirty days after he was served the Board's decision denying his request for parole reconsideration dated May 10, 2009. The time has passed for Petitioner to file such an action, and there are no other non-futile state court remedies available to Petitioner."); *Wells v. Burl*, 2014 WL 6892177, *3 (E.D. Ark. Dec. 4, 2014) (unpublished) ("Here, [petitioner] could have sought review of the Parole Board's decision as required by the Arkansas Administrative Procedure Act[.] He did not seek such review and as such, no state court has been afforded an opportunity to consider his matter. Because [petitioner] failed to do so, his claims are procedurally defaulted."); *Tyler v. Guntharp*, 2010 WL 2330276, *3 (E.D. Ark. May 20, 2010) (unpublished) ("[I]n *Clinton v. Bonds* . . . the Arkansas Supreme Court held unconstitutional the portion of the statute barring inmates from bringing constitutional challenges. As a result, Mr. Tyler could have filed a claim pursuing his constitutional claims in state circuit court within 30 days after he was served with the Arkansas Board of Parole's December 18, 2009, decision. The time for filing such an action has now passed, and there are no other non-futile state court remedies available to Mr. Tyler.").

The Parole Board's decision became "final" after it denied Howard's last request for reconsideration, on July 21, 2013. *Doc. 2 at 62.* Under the APA, Howard had thirty days from service of the Parole Board's final decision to file an APA action for judicial review in either Pulaski County Circuit Court or the circuit court in the county where he was incarcerated. *See* Ark. Code Ann. § 25-15-212(b)(1) (Repl. 2014). Because he did not do so, he has procedurally defaulted his habeas claim arising from the allegedly unconstitutional actions of the state Parole Board.

Nonetheless, if the requirements of the *narrow* "cause and prejudice" or "actual innocence" exceptions to procedural default are satisfied, the Court can still reach and decide the merits of Howard's procedurally defaulted habeas claim.[10] *Morgan v. Javois*, 744 F.3d 535, 538 (8th Cir. 2013).

As "cause" to excuse his procedural default, Howard correctly argues that the codified text of Ark. Code Ann. § 25-15-212(a), prohibiting ADC inmates from filing actions for judicial review of agency decisions, has remained *unchanged* since the Court's decision in *Clinton, over two decades ago*.

---

[10] "Cause" requires a showing of some impediment, external to the petitioner's defense and not fairly attributable to him, preventing him from constructing or raising his claims in state court or complying with the state's procedural rules. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). An external impediment may be shown where "the factual or legal basis for a claim was not reasonably available." *Id.*

Admittedly, the Arkansas legislature's decades-long refusal to remove the unconstitutional text from the statute is perplexing.[11] Nonetheless, as a *pro se* litigant, Howard is still charged with knowing the law relevant to his habeas claims. *See Weeks v. Bowersox*, 106 F.3d 248, 249 (8th Cir. 1997) ("A prisoner's illiteracy and *pro se* status are not cause."). Thus, the "cause and prejudice" exception to procedural default does not apply. Finally, Howard has not come forward with any argument or new evidence to satisfy the "actual innocence" exception to procedural default.

### III. Conclusion

IT IS THEREFORE RECOMMENDED that the Petition for a Writ of Habeas Corpus be DENIED, and that the case be DISMISSED, WITH PREJUDICE. IT IS FURTHER RECOMMENDED THAT a Certificate of Appealability be DENIED pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

Dated this 28th day of December, 2015.

_____
UNITED STATES MAGISTRATE JUDGE

---

[11] As early as 1995, United States District Judge G. Thomas Eisele noted that "[t]he Arkansas legislature has apparently not yet amended § 25–15–212(a) so as to bring that statute's language into harmony with the Arkansas Supreme Court's decision in *Clinton v. Bonds*." *Richmond v. Duke*, 909 F. Supp. 626, 628 n.6 (E.D. Ark. 1995).